# IN THE DISTRICT COURT OF THE UNITED STATES

## for the Western District of New York

_____

NOVEMBER 2011 GRAND JURY
(Impaneled 11/04/11)

**THE UNITED STATES OF AMERICA**

    *-vs-*

**CARL A. LARSON**
    (Counts 1-4, 6, 8),
**MARK N. KIRSCH**
    (Counts 1-3, 6, 7),
**JEFFREY A. PETERSON**
    (Counts 1, 2, 4-6),
**GERALD E. BOVE**
    (Counts 1, 2, 5),
**MICHAEL J. CAGGIANO**
    (Counts 2, 3),
**JEFFREY C. LENNON**
    (Counts 1, 2),
**KENNETH EDBAUER**
    (Counts 1, 2),
**GEORGE DEWALD**
    (Counts 1, 2, 4-6),
**MICHAEL J. EDDY**
    (Counts 1, 2, 6, 7), and
**THOMAS FREEDENBERG**
    (Counts 2, 8)

**SECOND SUPERSEDING
INDICTMENT**

**07-CR-304-S**

**Violations:**

Title 18, United States Code, Sections
1962(d), 1951(a) and 2

(8 Counts and Forfeiture Allegation)

## COUNT 1

### (Racketeering Conspiracy)

### The Grand Jury Charges that:

### INTRODUCTION

At all times material to Count 1:

## A.   The Enterprise

1.   There existed in the Western District of New York, and elsewhere, an "Enterprise" as that term is defined in Title 18, United States Code, Section 1961(4); namely, a labor union and a group of individuals associated in fact.  The Enterprise consisted of a labor union known as the International Union of Operating Engineers, Local 17, AFL-CIO (hereinafter, Local 17), a labor organization as defined under the Labor Management Relations Act, Title 29, United States Code, Section 152(5), with principal offices located at 5959 Versailles Road, Lakeview, New York 14085, and defendants **CARL A. LARSON, MARK N. KIRSCH, JEFFREY A. PETERSON, GERALD E. BOVE, JEFFREY C. LENNON, KENNETH EDBAUER, GEORGE DEWALD,** and **MICHAEL J. EDDY,** and others, known and unknown to the grand jury, who were associated in fact and will be hereinafter referred to as the **Local 17 Criminal Enterprise.**  From in or about January 1997 to in or about December, 2007, the exact dates being to the grand jury unknown, the **Local 17 Criminal Enterprise** functioned as

a continuing unit for a common purpose to achieve shared objectives as set forth below.  The **Local 17 Criminal Enterprise** was engaged in, and its activities affected, interstate commerce.

B.    **Roles of the Defendants**

2.    Defendant **CARL A. LARSON** was a primary figure within the **Local 17 Criminal Enterprise** and a member of Local 17.  Since 2001, **LARSON** has held the position of Organizer within Local 17.

3.    Defendant **MARK N. KIRSCH** was a primary figure within the **Local 17 Criminal Enterprise** and a member of Local 17.  Since 1997, **KIRSCH** was the President and Business Manager for Local 17.

4.    Defendant **JEFFREY A. PETERSON** was a member of Local 17 who also occupied positions of influence within the **Local 17 Criminal Enterprise**, including, Guard, Organizer, Financial Secretary and Business Representative since at least 2000.

5.    Defendant **GERALD E. BOVE** was a member of Local 17 who also occupied positions of influence within the **Local 17 Criminal Enterprise**, including, Vice President and Business Representative from at least 2000 through his retirement in 2004.

6.    Defendants **JEFFREY C. LENNON, KENNETH EDBAUER, GEORGE DEWALD,** and **MICHAEL J. EDDY,** were all members of Local 17 and were all associated with the **Local 17 Criminal Enterprise.**

7.    The defendants, as a group, were willing to engage in, among other things, acts and threats of violence against persons, and sabotage and destruction of property on construction projects in Western New York.  These criminal acts were perpetrated by the defendants upon a number of victims including persons and businesses conducting construction projects in the Western District of New York.

**C.    <u>Objectives of the Local 17 Criminal Enterprise</u>**

8.    The objectives of the **Local 17 Criminal Enterprise** included attempts to obtain by extortion the following:

a.    Property of construction contractors consisting of wages and benefits to be paid pursuant to labor contracts with Local 17 at construction projects in Western New York.

b.    Property of non-union construction laborers consisting of the jobs being performed by those non-union laborers and the wages and benefits associated with those jobs at construction projects in Western New York.

c.     Property of construction contractors and businesses consisting of the right to make business decisions free from outside pressure at construction projects in Western New York.

d.     Property of construction contractors consisting of wages and employee benefit contributions paid or to be paid by said contractors for unwanted, unnecessary, and superfluous labor.

## D.     <u>Means and Methods of the Local 17 Criminal Enterprise</u>

9.     Among the means and methods by which the defendants and their associates agreed to conduct and participate in the conduct of the affairs of the **Local 17 Criminal Enterprise** were the following:

a.     Members of the **Local 17 Criminal Enterprise** and their associates engaged in the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to construction contractors, non-union construction laborers and their property, to accomplish the objectives of the **Local 17 Criminal Enterprise**, all of which affected interstate commerce.

b.     Members of the **Local 17 Criminal Enterprise** and their associates promoted a climate of fear through violence and threats of violence to businesses, construction industry employers and employees.

c.     Members of the **Local 17 Criminal Enterprise** and their associates used and threatened to use physical violence against businesses and numerous persons, including persons associated with construction industry employers and employees and innocent bystanders.

d.     Members of the **Local 17 Criminal Enterprise** and their associates destroyed and sabotaged, and threatened to destroy and sabotage, property and construction equipment, and to interrupt and impede the progress of construction projects.

e.     Members of the **Local 17 Criminal Enterprise** and their associates promoted a climate of fear through violence, and threats of violence, against construction contractors in an effort to induce employers to pay wages and employee benefits pursuant to labor contracts with Local 17 for themselves and third persons.

f.     Members of the **Local 17 Criminal Enterprise** and their associates promoted a climate of fear through violence, and threats of violence, against construction contractors in an effort to induce employers to pay wages and employee benefits for unwanted, unnecessary and superfluous labor by members of Local 17.

g.     Members of the **Local 17 Criminal Enterprise** and their associates promoted a climate of fear through violence, and threats of violence, against non-union construction laborers working in Western New York, in an effort to induce employers to terminate those non-union laborers in order to obtain the jobs being

performed by those non-union laborers, the payment of wages and employee benefits associated with those jobs, for themselves and third persons.

h.    Members of the **Local 17 Criminal Enterprise** and their associates promoted a climate of fear through violence, and threats of violence, against construction contractors and businesses in an effort to obtain the construction contractors' and businesses' right to make business decisions free from outside pressure at construction projects in Western New York.


**E.    <u>Racketeering Conspiracy Charge</u>**


10.    Beginning in or about January 1997 and continuing thereafter, up to and including in or about December 2007, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON, MARK N. KIRSCH, JEFFREY A. PETERSON, GERALD E. BOVE, JEFFREY C. LENNON, KENNETH EDBAUER, GEORGE DEWALD,** and **MICHAEL J. EDDY,** together and with others, both known and unknown, being persons employed by and associated with the **Local 17 Criminal Enterprise**, which was engaged in, and the activities of which affected, interstate commerce, unlawfully and knowingly combined, conspired, confederated and agreed, together, with each other, and with others, to violate the provisions of Title 18, United States

Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the **Local 17 Criminal Enterprise** through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and (5). The pattern of racketeering through which the defendants agreed to conduct the affairs of the enterprise consisted of the acts set forth in Racketeering Acts 1 through 10 of this Count, which are fully incorporated as if fully set forth herein.

11. It was a part of the conspiracy that during the aforesaid period, the defendants, **CARL A. LARSON, MARK N. KIRSCH, JEFFREY A. PETERSON, GERALD E. BOVE, JEFFREY C. LENNON, KENNETH EDBAUER, GEORGE DEWALD,** and **MICHAEL J. EDDY,** together and with others, agreed that a conspirator employed by or associated with the **Local 17 Criminal Enterprise** would commit at least two acts of racketeering activity in the conduct of the affairs of the **Local 17 Criminal Enterprise.**

## RACKETEERING ACT 1

## Attempted Extortion of STS Construction of
## Western New York and its Employees

The defendants, **CARL A. LARSON** and **MARK N. KIRSCH**, committed the following acts, either one of which alone constitutes the commission of Racketeering Act 1.

## A.    Attempted Extortion — Hobbs Act

Commencing in or about January, 1997 through and including in or about May 2003, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON** and **MARK N. KIRSCH**, with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce, by extortion, and attempted to do so; that is, did attempt to obtain property of STS Construction of Western New York (hereinafter, "STS"), and its employees such property consisting of (i) STS' right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by STS for unwanted, unnecessary, and superfluous labor, and (iii) STS's employees' jobs and associated wages and benefits, at several construction project locations, to include, among others:  the Roswell Park Cancer Institute site, in Buffalo, New York; the Rath Building site, in Buffalo, New York;

the Buffalo Psychiatric Center site, in Buffalo, New York; the Army Corps of Engineers site, in Tonawanda, New York; and the General Motors Plant in the Town of Tonawanda, New York, with the consent of STS and its owner Timothy P. Such, agents, and employees induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to STS, its owner Timothy P. Such, and employees and their property, which is indictable as a violation of Title 18, United States Code, Sections 1951(a) and 2.

**B.     Attempted Extortion of STS and Employees — New York Penal Law**

Commencing in or about January 1997, through and including in or about May 2003, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON** and **MARK N. KIRSCH**, with others, known and unknown, with intent to appropriate and obtain property for themselves and third persons from STS and its owner Timothy P. Such, their operators, employees, and agents, such property consisting of (i) wages and benefits to be paid by STS pursuant to labor contracts with Local 17, and (ii) STS's employees' existing jobs and wages and benefits associated with those jobs; did wrongfully attempt to obtain such property from STS and its owner Timothy P. Such, their operators, employees, and agents, at several construction project

locations, to include, among others: the Roswell Park Cancer Institute site in Buffalo, New York; the Rath Building site in Buffalo, New York; the Buffalo Psychiatric Center site in Buffalo, New York; the Army Corps of Engineers site in Tonawanda, New York; and the General Motors Plant in the Town of Tonawanda, New York, by means of extortion, that is, by compelling and inducing and attempting to compel and induce STS and its owner Timothy P. Such, their operators, employees, and agents, to deliver said property to the defendant, and others, by means of instilling in STS and its owner Timothy P. Such, their operators, agents, and employees, a fear that if the property was not so delivered, the defendants and others would cause physical injury to some person in the future and cause damage to property, which is chargeable as a violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii), 155.40, 110.00, 110.05 and 20.00.

## RACKETEERING ACT 2

### Attempted Extortion of Zoladz Construction Company, Inc. and its Employees

The defendants, **JEFFREY A. PETERSON, CARL A. LARSON**, and **GEORGE DEWALD**, committed the following acts, either one of which alone constitutes the commission of Racketeering Act 2.

## A.    <u>Attempted Extortion — Hobbs Act</u>

Commencing in or about sometime in 2002, through and including on or about May 25, 2004, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **JEFFREY A. PETERSON, CARL A. LARSON**, and **GEORGE DEWALD**, together and with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce, by extortion, and attempted to do so, that is, did attempt to obtain property of Zoladz Construction (hereinafter referred to as "Zoladz"), and its employees, such property consisting of (i) Zoladz's right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by Zoladz for unwanted, unnecessary, and superfluous labor, and (iii) Zoldaz's employees' jobs and associated wages and benefits, at several construction project locations, to include, among others:  73 Tyler Street, Buffalo, New York; 216 Strauss Street, Buffalo, New York; 32 Wilson Street, Buffalo, New York; 841 Clinton Street, Buffalo, New York; and the Dunkirk landfill, Pomfret, New York, with the consent of Zoladz, its owners, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to Zoladz, its owners, and employees and their property,

which is indictable as a violation of Title 18, United States Code, Sections 1951(a) and 2.


## B.    Attempted Extortion — New York Penal Law


Commencing in or about sometime in 2002, through and including on or about May 25, 2004, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **JEFFREY A. PETERSON, CARL A. LARSON**, and **GEORGE DEWALD**, together and with others, known and unknown, with intent to appropriate and obtain property for themselves and third persons from Zoladz, its owners, operators, employees, and agents, such property consisting of (i) wages and benefits to be paid by Zoladz pursuant to labor contracts with Local 17, and (ii) Zoldaz's employees' existing jobs and wages and benefits associated with those jobs; did wrongfully attempt to obtain such property from Zoladz, its owners, operators, employees, and agents, at several construction project locations to include, among others:  73 Tyler Street, Buffalo, New York; 216 Strauss Street, Buffalo, New York; 32 Wilson Street, Buffalo, New York; 841 Clinton Street, Buffalo, New York; and the Dunkirk landfill, Pomfret, New York, by means of extortion; that is, by compelling and inducing, and attempting to compel and induce, Zoladz, its owners, operators, employees, and agents, to deliver said property to the defendants, and others, by

means of instilling in Zoladz, its owners, operators, employees, and agents, a fear that, if the property was not so delivered, the defendants and others would cause physical injury to some person in the future and cause damage to property, which is chargeable as a violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii), 155.40, 110.00, 110.05 and 20.00.

<u>**RACKETEERING ACT 3**</u>

<u>**Attempted Extortion of Waste Management and Marcy Excavation Company and Employees Relating to the Chaffee, New York Landfill Project**</u>

The defendants, **GERALD E. BOVE, MICHAEL J. EDDY, GEORGE DEWALD,** and **JEFFREY A. PETERSON,** committed the following acts, either one of which alone constitutes the commission of Racketeering Act 3.

**A.** <u>**Attempted Extortion — Hobbs Act**</u>

Commencing in or about January 2003, through and including in or about September 2003, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, defendants **GERALD E. BOVE, MICHAEL J. EDDY, GEORGE DEWALD,** and **JEFFREY A. PETERSON,** together and with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce and

the movement of articles and commodities in interstate commerce, by extortion, and attempted to do so, that is, did attempt to obtain property of Waste Management (hereinafter referred to as "WM"), Marcy Excavation Company (hereinafter, "Marcy") and its employees, such property consisting of (i) WM's and Marcy's right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by Marcy for unwanted, unnecessary, and superfluous labor, and (iii) Marcy's employees' jobs and associated wages and benefits, at a landfill construction project in Chaffee, New York with the consent of WM, Marcy, their owners, agents, and employees induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to WM, Marcy, their owners, and employees and their property, which is indictable as a violation of Title 18, United States Code, Sections 1951(a) and 2.

## B.   <u>Attempted Extortion — New York Penal Law</u>

Commencing in or about January 2003, through and including in or about September 2003, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, defendants **GERALD E. BOVE, MICHAEL J. EDDY, GEORGE DEWALD**, and **JEFFREY A. PETERSON**, with others, known and unknown, with intent to appropriate and obtain property for themselves and third persons

from Marcy, its owners, operators, employees, and agents, such property consisting of (i) wages and benefits to be paid by Marcy pursuant to labor contracts with Local 17 and (ii) Marcy's employees' existing jobs and the payment of wages and benefits associated with those jobs; did wrongfully attempt to obtain such property from Marcy, its owners, operators, employees, and agents, at the Chaffee landfill construction project in Chaffee, New York, by means of extortion; that is, by compelling and inducing, and attempting to compel and induce, Marcy, its owners, operators, employees, and agents, to deliver said property to the defendants, and others, by means of instilling in Marcy, its owners, operators, employees, and agents, a fear that, if the property was not so delivered, the defendants and others would cause physical injury to some person in the future and cause damage to property, which is chargeable as a violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii), 155.40, 110.00, 110.05 and 20.00.


## RACKETEERING ACT 4

### Attempted Extortion of Environmental Strategies and Ontario Specialty Contracting and Employees Relating to a Construction Clean-up Project at the Former National Fuel Site in Buffalo, New York


The defendants, **CARL A. LARSON, MARK N. KIRSCH, JEFFERY A. PETERSON, GEORGE DEWALD,** and **MICHAEL J. EDDY,** committed the

following acts, either one of which alone constitutes the commission of Racketeering Act 4.

## A. Attempted Extortion — Hobbs Act

Commencing in or about April 2005, through and including in or about November 2005, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON, MARK N. KIRSCH, JEFFERY A. PETERSON, GEORGE DEWALD,** and **MICHAEL J. EDDY,** together and with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce in the movement of articles and commodities in interstate commerce by extortion, and attempted to do so, that is, did attempt to obtain property of Environmental Strategies (hereinafter referred to as "ES"), Ontario Speciality Contracting (hereinafter, "OSC") and its employees, such property consisting of (i) ES's and OSC's right to make business decisions free from outside pressure (ii) wages and benefits to be paid by OSC for unwanted, unnecessary, and superfluous labor, and (iii) OSC's employees' jobs and associated wages and benefits, at a construction clean-up project at the former National Fuel site in Buffalo, New York, with the consent of ES, OSC, their owners, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from

actual and threatened physical violence to ES, OSC, their owners, and employees and their property, which is indictable as a violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    **<u>Attempted Extortion — New York Penal Law</u>**

Commencing in or about April 2005, through and including in or about November 2005, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON, MARK N. KIRSCH, JEFFERY A. PETERSON, GEORGE DEWALD**, and **MICHAEL J. EDDY,** together and with others, known and unknown, with intent to appropriate and obtain property for themselves and third persons from OSC, its owners, operators, employees, and agents, such property consisting of (i) wages and benefits to be paid by OSC pursuant to labor contracts with Local 17 and (ii) OSC's employees existing jobs and the payment of wages and benefits associated with those jobs, did wrongfully attempt to obtain such property from OSC, its owners, operators, employees, and agents, at a construction clean-up project at the former National Fuel site in Buffalo, New York, by means of extortion; that is, by compelling and inducing, and attempting to compel and induce, OSC, its owners, operators, employees, and agents, to deliver said property to the defendants, and others, by means of instilling in OSC, its owners, employees, operators and agents, a

fear that, if the property was not so delivered, the defendants and others would cause physical injury to some person in the future and cause damage to property, which is chargeable as a violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii), 155.40, 110.00, 110.05 and 20.00.


## RACKETEERING ACT 5

### Attempted Extortion of Ecology & Environment and Earth Tech and Employees Relating to a Construction Project at the Fourth Street Remediation Site in Buffalo, New York


The defendants, **MARK N. KIRSCH** and **MICHAEL J. EDDY**, committed the following acts, either one of which alone constitutes the commission of Racketeering Act 5.


## A. Attempted Extortion — Hobbs Act


Commencing in or about April 2005, through and including in or about September 2005, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **MARK N. KIRSCH** and **MICHAEL J. EDDY**, together and with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, and attempted to do so, that is, did attempt to obtain property of Ecology &

Environment (hereinafter referred to as "EE"), Earth Tech and its employees, such property consisting of (i) EE's and Earth Tech's right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by Earth Tech for unwanted, unnecessary, and superfluous labor, and (iii) Earth Tech's employees' jobs and associated wages and benefits, at a construction project at the Fourth Street Remediation site in Buffalo, New York, with the consent of EE, Earth Tech, their owners, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to EE, Earth Tech, its owners, and employees and their property, which is indictable as a violation of Title 18, United States Code, Sections 1951(a) and 2.

B. **Attempted Extortion — New York Penal Law**

Commencing in or about April 2005, through and including in or about September 2005, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **MARK N. KIRSCH** and **MICHAEL J. EDDY**, together and with others, known and unknown, with intent to appropriate and obtain property for themselves and third persons from Earth Tech, its owners, operators, employees, and agents, such property consisting

of (i) wages and benefits to be paid by Earth Tech pursuant to labor contracts with Local 17; and (ii) Earth Tech's employees' existing jobs and wages and benefits associated with those jobs; did wrongfully attempt to obtain such property from Earth Tech, its owners, operators, employees, and agents, at a construction project at the Fourth Street Remediation site in Buffalo, New York, by means of extortion; that is, by compelling and inducing, and attempting to compel and induce, Earth Tech, its owners, operators, employees, and agents, to deliver said property to the defendants, and others, by means of instilling in Earth Tech, its owners, operators, employees, and agents, a fear that, if the property was not so delivered, the defendants and others would cause physical injury to some person in the future and cause damage to property, which is chargeable as a violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii), 155.40, 110.00, 110.05 and 20.00.

### RACKETEERING ACT 6

### Attempted Extortion of Ingalls Site Development and Employees Relating to a Construction Project on Delaware Avenue in Buffalo, New York

### Attempted Extortion — New York Penal Law

Commencing in or about March 2006, through and including in or about June 2006, the exact dates being to the grand jury unknown,

in the Western District of New York, and elsewhere, the defendants, **MARK N. KIRSCH**, **JEFFREY C. LENNON**, and **KENNETH EDBAUER**, together and with others, known and unknown, with intent to appropriate and obtain property for themselves and third persons from Ingalls, its owners, operators, employees, and agents, such property consisting of (i) wages and benefits to be paid by Ingalls pursuant to labor contracts with Local 17; and (ii) Ingalls' employees existing jobs and wages and benefits associated with those jobs; did wrongfully attempt to obtain such property from Ingalls, its owners, operators, employees, and agents, at a construction project on Delaware Avenue in Buffalo, New York, by means of extortion; that is, by compelling and inducing, and attempting to compel and induce, Ingalls, its owners, operators, employees, and agents, to deliver said property to the defendants, and others, by means of instilling in Ingalls, its owners, operators, employees, and agents, a fear that, if the property was not so delivered, the defendants and others would cause physical injury to some person in the future and cause damage to property, which is chargeable as a violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii), 155.40, 110.00, 110.05 and 20.00.

## RACKETEERING ACT 7

### Attempted Extortion of H.G. Spicer & Sons, Inc. and Employees Relating to a Construction Project at Buffalo State College, Buffalo, New York

### Attempted Extortion — New York Penal Law

In or about March 2001 through in or about May 2001, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendant, **GERALD E. BOVE**, with others, known and unknown, with intent to appropriate and obtain property for themselves and third persons from H.G. Spicer and Sons, Inc. (hereinafter referred to as "Spicer"), its owners, operators, employees, and agents, such property consisting of (i) wages and benefits to be paid by Spicer pursuant to labor contracts with Local 17; and (ii) Spicer's employees' existing jobs and wages and benefits associated with those jobs, did wrongfully attempt to obtain such property from Spicer, its owners, operators, employees, and agents, at a construction project at Buffalo State College in Buffalo, New York, by means of extortion; that is, by compelling and inducing, and attempting to compel and induce, Spicer, its owners, operators, employees, and agents, to deliver said property to the defendant, and others, by means of instilling in them a fear that, if the property was not so delivered, the defendant and others would cause physical injury to some person in the future and cause damage to property, which is chargeable as a

violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii), 155.40, 110.00, 110.05 and 20.00.


### RACKETEERING ACT 8

### Attempted Extortion of Tom Greenauer Development, Inc. (TGDI) and Employees Relating to a Construction Project at the Ralph Wilson Stadium Renovation Project


### Attempted Extortion — New York Penal Law


In or about January 1999, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendant, **MARK N. KIRSCH**, with others, known and unknown, with intent to appropriate and obtain property for themselves and third persons from Tom Greenauer Development Inc. (hereinafter referred to as "TGDI"), its owners, operators, employees, and agents, such property consisting of (i) wages and benefits to be paid by TGDI pursuant to labor contracts with Local 17; and (ii) TGDI's employees existing jobs and wages and benefits associated with those jobs; did wrongfully attempt to obtain such property from TGDI, its owners, operators, employees, and agents, at a renovation project at the Ralph Wilson Stadium renovation project, by means of extortion; that is, by compelling and inducing, and attempting to compel and induce, TGDI, its owners, operators, employees, and agents, to deliver said property to the defendant, and others, by means of instilling in them a fear that, if the property was not so

delivered, the defendant and others would cause physical injury to some person in the future and cause damage to property, which is chargeable as a violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii), 155.40, 110.00, 110.05 and 20.00.


### RACKETEERING ACT 9

### Attempted Extortion of Wadsworth Golf Construction (WGC) and Employees Relating to a Construction Projects in Orchard Park and Cheektowaga, New York


The defendants, **CARL A. LARSON** and **MARK N. KIRSCH**, committed the following acts, either one of which alone constitutes the commission of Racketeering Act 9.


**A.    Attempted Extortion — Hobbs Act**


In or about October 2003, through in or about Summer 2007, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON** and **MARK N. KIRSCH**, together and with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, and attempted to do so, that is, did attempt to obtain property of Wadsworth Golf Construction (WGC), and its employees, such property consisting of (i) WGC's right to make business

decisions free from outside pressure, (ii) wages and benefits to be paid by WGC for unwanted, unnecessary, and superfluous labor, and (iii) WGC's employees' jobs and associated wages and benefits, at construction projects at the First Tee job site in Orchard Park, New York and at a job site in Cheektowaga, New York, with the consent of WGC, its owners, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to WGC, its owners, and employees and their property, which is indictable as a violation of Title 18, United States Code, Sections 1951(a) and 2.

## B.    <u>Attempted Extortion — New York Penal Law</u>

In or about October 2003 through in or about Summer 2007, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON** and **MARK N. KIRSCH**, together and with others, known and unknown, with intent to appropriate and obtain property for themselves and third persons from WGC, its owners, operators, employees, and agents, such property consisting of (i) wages and benefits to be paid by WGC pursuant to labor contracts with Local 17; and (ii) WGC's employees' existing jobs and wages and benefits associated with those jobs; did wrongfully attempt to obtain such property

from WGC, its owners, operators, employees, and agents, at a construction project at the First Tee job site in Orchard Park, New York and at a job site in Cheektowaga, New York, by means of extortion; that is, by compelling and inducing, and attempting to compel and induce, WGC, its owners, operators, employees, and agents, to deliver said property to the defendants, and others, by means of instilling in them a fear that, if the property was not so delivered, the defendants and others would cause physical injury to some person in the future and cause damage to property, which is chargeable as a violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii), 155.40, 110.00, 110.05 and 20.00.


## RACKETEERING ACT 10

### Attempted Hobbs Act Extortion and Conspiracy to Commit Extortion


The defendants, **JEFFREY C. LENNON** and **KENNETH EDBAUER**, committed the following acts, either one of which alone constitutes the commission of Racketeering Act 10.


## A.   Attempted Extortion – Hobbs Act


Between in or about January 1997 and in or about December 2007, the exact dates being to the grand jury unknown, in the

Western District of New York, and elsewhere, the defendants, **JEFFREY C. LENNON** and **KENNETH EDBAUER**, together and with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, and attempted to do so, that is, did attempt to obtain property of employer construction contractors, and their employees, such property consisting of (i) the employer construction contractors' right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by the employer construction contractors for unwanted, unnecessary, and superfluous labor, and (iii) the employer construction contractors' employees' jobs and associated wages and benefits, at construction projects in Western New York, with the consent of employer construction contractors, their owners, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to the employer construction contractors, their owners, and employees and their property, which is indictable as a violation of Title 18, United States Code, Sections 1951(a) and 2.

**B.** **Conspiracy to Commit Extortion in violation of New York Penal Law**

Between in or about January 1997 and in or about December 2007, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **JEFFREY C. LENNON** and **KENNETH EDBAUER**, together and with others, known and unknown, did combine, conspire, confederate, and agree together with each other and with others, with intent to appropriate and obtain property for themselves and third persons from employer contractors, their owners, operators, agents, and employees, such property consisting of (i) wages and benefits to be paid by employer contractors pursuant to labor contracts with Local 17, and (ii) the existing jobs and wages and benefits associated with those jobs of the contractor employers' employees, did wrongfully attempt to obtain such property from contractors, their owners, operators, agents, and employees, at construction projects at job sites in the Western District of New York, by means of extortion; that is, by compelling and inducing, and attempting to compel and induce, contractors, their owners, operators, agents, and employees to deliver said property to the defendants, and others, by means of instilling in them a fear that, if the property was not so delivered, the defendants and others would cause physical injury to some person in the future and cause damage to

property, which is chargeable as a violation of New York State Penal Law Sections 155.05(2)(e)(i) and (ii) and 155.40.

**IN FURTHERANCE OF SAID CONSPIRACY,** and in order to affect its purpose and object, on or about May 1, 2006, defendant **KENNETH EDBAUER** discussed with defendant **JEFFREY C. LENNON,** and others, the recording of the description of trucks crossing a picket line at Uniland's Delaware Avenue job site for the purpose of targeting the trucks and damaging them at a later time, all in violation of New York State Penal Law Section 105.10.

**All in violation of Title 18, United States Code, Section 1962(d).**

## COUNT 2

**(Hobbs Act Conspiracy)**

**The Grand Jury Further Charges that:**

In or about January 1997 and continuing thereafter up to and including in or about December 2007, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON, MARK N. KIRSCH, JEFFREY A. PETERSON, GERALD E. BOVE, MICHAEL J. CAGGIANO, JEFFREY C. LENNON, KENNETH EDBAUER, GEORGE DEWALD, MICHAEL J. EDDY,** and **THOMAS FREEDENBERG,** together with each other and with others, known and

unknown, did combine, conspire, confederate and agree to violate the provisions of Title 18, United States Code, Section 1951(a), that is, to unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, and to attempt to do so, that is, obtain and attempt to obtain property of certain employer contractors and their employees, such property consisting of (i) the employer contractor's right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by the employer contractors for unwanted, unnecessary, and superfluous labor, and (iii) the jobs and associated wages and benefits of the employer contractors' employees, at construction projects in the Buffalo, New York area, and elsewhere, with the consent of the employer contractors, their owners, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to the employer contractors, their owners, operators, agents, and employees, and their property, which is indictable as a violation of Title 18, United States Code, Sections 1951(a) and 2.

## OVERT ACTS IN FURTHERANCE OF COUNT 2

In furtherance of the conspiracy and in order to effect the objects thereof, the defendants and their co-conspirators committed the following overt acts, among others:

1. In or about approximately 1997, a representative of STS Construction, was approached by the business agent of Local 17 at a construction site at Roswell Park to sign a Collective Bargaining Agreement (hereinafter, "CBA"). The representative of STS refused and the Local 17 Business Agent subsequently harassed the STS representative over the telephone after such refusal.

2. In or about January 1999, Local 17 members picketed a construction project at Ralph Wilson Stadium and the use of non-union contractor, Tom Greenauer Development. On or about January 13, 1999, a Local 17 member broke a window on a Greenauer company vehicle as it crossed through the picket line, causing the broken glass to cut the face of the driver of the vehicle. Greenauer was later replaced on the project by a union contractor and the picketing ceased. At a later date, during a discussion about the damage caused by Local 17 at the Ralph Wilson Stadium picket, defendant **MARK N. KIRSCH** stated, "We did what we had to do."

3.    On at least two occasions between in or about 1998 and 2004, Local 17 members, including apprentices made "stars" at the Local 17 Training Center by cutting metal pipe into wedges and welding these wedges to form a "star" configuration.

4.    On or about March 8, 2000, a Local 17 member visited a job site on Milestrip Road in Hamburg, New York, where Custom Topsoil, a non-union contractor, was working.  Overnight, on or about March 8, 2000, defendant **MICHAEL J. EDDY** and others vandalized ten pieces of construction equipment by pouring sand into the equipment's oil systems (a tactic referred to as "sanding" equipment or having equipment "sanded"), causing damage totaling approximately $74,987.

5.    In or about February or March of 2001, Janik Paving had several pieces of construction equipment sanded at a jobsite located at the Gowanda Schools.  Defendant **CARL A. LARSON** and other Local 17 members told Janik that the problems would go away if Janik signed a Collective Bargaining Agreement with Local 17.

6.    On or about May 29, 2001, H.G. Spicer & Sons, Inc. was working on a project at Buffalo State College.  Local 17 members, including defendant **GERALD E. BOVE**, were picketing this site and entered the work site.  A Local 17 picketer yelled to an employee

of H.G. Spicer & Sons, Inc., "Come here and I will rip your fucking head off."  Defendant **BOVE** yelled, "You can't come into our area and steal our work."

7.    In or about 2001, two Local 17 members attempted to drag a representative of STS Construction into a bathroom at the Purple Moose.  One of the Local 17 members told the representative of STS, "You're going to sign up with Local 17."

8.    On or about June 4 or 5, 2002, defendant **CARL A. LARSON** visited a job site in West Seneca where Economy Tree Service, a non-union contractor, was working.  On or about June 5, 2002, members of Local 17 ran the license plates of an Economy Tree Service employee and a company truck.  Overnight, on or about June 7, 2002, and again on or about June 10, 2002, two excavators at the job site were vandalized by being sanded, which caused significant damage to the equipment.

9.    On or about June 14, 2002, a Local 17 member told a representative of Zoladz Construction, a non-union contractor, that any private work in Buffalo was the Local 17 member's, that the Local 17 member was going to force the representative of Zoladz out of Buffalo, and that the Local 17 member was going to "play the game dirty."

10.   In or about the summer of 2002, a representative of STS was confronted by a Local 17 member who attempted to get the representative of STS to sign a CBA.   The representative of STS declined.   Subsequently, two pieces of STS's construction equipment were vandalized at the Buffalo Psychiatric Center.

11.   On or about August 21, 2002, defendant **CARL A. LARSON** and other Local 17 members sanded construction equipment belonging to Amherst Paving at a job site located in Eden, New York.

12.   In or about September 2002, defendant **CARL A. LARSON** was observed at the Town of Hamburg Soccer Fields where Oliveri Development, a non-union contractor, was working.   On or about September 25, 2002, members of Local 17, utilizing the New York State Department of Motor Vehicles license database, ran the license plate of a vehicle registered to Oliveri Development that was located at this work site.   Overnight, defendant **LARSON** and others, on or about September 27, 2002, vandalized four (4) pieces of construction equipment by pouring a grinding compound into the oil, transmission, and fuel systems causing approximately $250,000 in damage to the equipment.   A Town of Hamburg bulldozer located at the same site was not vandalized.

13.  During the same weekend beginning on or about September 27, 2002, NC Contracting, Tom Greenauer Development, and Russo Development, all non-union contractors working in the Hamburg area, had a total of approximately fourteen (14) pieces of their construction equipment vandalized after a grinding compound was poured into their oil systems by defendant **CARL A. LARSON** and others, causing approximately $80,000 in damage.  Defendant **LARSON** was observed at the Russo Development work site two days before the damage occurred and was attempting to speak with Russo's employees.  Defendant **LARSON** later informed defendant **MARK N. KIRSCH** of the vandalism that he and others participated in that evening.

14.  On or about December 23, 2002, defendant **MICHAEL J. CAGGIANO**, a Local 17 member, stabbed Timothy P. Such, President of STS, in the neck with a knife at Kettle's Restaurant in Orchard Park, New York.  Also, on that night, Such's tires were slashed on his 2002 Ford F-350 pickup truck.

15.  On or about December 27, 2002, representatives of STS had a conversation with defendant **CARL A. LARSON.**  The STS representatives told defendant **LARSON** that it appeared that defendant **LARSON** "pumped up" his members to get them "to take aggressive action." Defendant **LARSON** stated, "We kind of do that."

16.  On or about December 30, 2002, defendant **CARL A. LARSON** told a representative of STS, "You should sign.  Russo's Equipment was damaged ...  If you had signed, these things wouldn't happen to you."

17.  On or about February 5, 2003, defendant **CARL A. LARSON** had a conversation with a representative of STS.  Defendant **LARSON** attempted to have STS sign a CBA.  The representative of STS asked defendant **LARSON**, "What are the positives?  You guys slash my tires, stab me in the neck, try to beat me up in a bar.  What are the positives to signing?  There are only negatives." Defendant **LARSON** responded, "The positives are that the negatives you are complaining about would go away."

18.  On or about February 7, 2003, at Milligan's Pub, a representative of STS was told by an unknown male, "If anything happens to Mike (referring to defendant **MICHAEL J. CAGGIANO**), we're going to get you."

19.  On or about January 27, 2003, at 73 Tyler Street in Buffalo, New York, five (5) Local 17 members verbally harassed a representative of Zoladz.  A Local 17 member told the representative of Zoladz, "We are going to destroy you and your

machine and you are not going to work in Buffalo."  As the representative of Zoladz left, a Local 17 member spit on him.


20.  On or about January 27, 2003, as a representative of Zoladz was driving his automobile, a Local 17 member attempted to cut him off and run him off the road on several different occasions at different locations.


21.  On or about January 28, 2003, at 32 Wilson Street in Buffalo, New York, a representative of Zoladz's excavator was sabotaged by having sand poured into the oil box.  During that time, at the site, defendants **CARL A. LARSON** and **JEFFREY C. LENNON** said to the representative of Zoladz, "What's the matter with your machine?" and, "You've got problems with your machine?" and, "We told you we were going to destroy you and your machine."


22.  On or about March 18, 2003, Local 17 members threatened to kill a representative of Zoladz while the representative was at a demolition site at 841 Clinton Street in Buffalo, New York.


23.  On or about March 25, 2003, defendant **CARL A. LARSON** sent by facsimile a Memorandum of Agreement to STS Construction of Western New York.

24.   In or about April 2003, a representative of Marcy Excavation Company had a telephone conversation with defendant **GERALD E. BOVE,** wherein defendant **BOVE** stated that the Chaffee Landfill work had been done by the union in the past and "that was the way the landfill was going to be done."

25.   Sometime in or about April 2003, defendant **GERALD E. BOVE** had a meeting with representatives of Marcy Excavation and defendant **BOVE** asked them if they had a tape recorder secreted on them.  At that meeting, defendant **BOVE** repeated that the work on the Chaffee Landfill had been done by the union and that was the way it was to be done.

26.   Sometime in or about April 2003, a representative of Marcy called defendant **GERALD E. BOVE** and asked defendant **BOVE** to reconsider Marcy's proposal to hire Local 17 workers but to not sign a contract. Defendant **BOVE** hung up the telephone on the representative of Marcy.

27.   On or about April 28, 2003, defendant **GERALD E. BOVE** spoke with a representative of Waste Management to inquire about who was going to be awarded the new project to be done at the Chaffee Landfill.  After being advised that Marcy Excavating was low bidder and was awarded the work, defendant **BOVE** responded that

they were non-union and he was going to go to all of the local town and let them know that Waste Management was not hiring local people.

28. On or about May 1, 2003, defendant **JEFFREY A. PETERSON** told a representative of Waste Management that Local 17 would start a campaign to organize the Waste Management employees if Waste Management used a non-union contractor on the landfill project.

29. On or about May 8, 2003, defendants **MICHAEL J. EDDY**, **GEORGE DEWALD**, and others, vandalized eight (8) pieces of Marcy Excavation Company's construction equipment by pouring a grinding compound into the construction equipment causing approximately $200,000 in damage.

30. On or about May 29, 2003, and continuing for several weeks thereafter, members of Local 17, including defendants **GERALD E. BOVE** and **JEFFREY A. PETERSON**, began picketing at the Chaffee Landfill where Marcy Excavating was working.

31. On or about May 30, 2003, three (3) welded, sharp pieces of metal known as "stars" were found in the gravel driveway at the Chaffee Landfill.

32.  On or about June 2, 2003, a representative of Marcy Excavation Company had a tire flattened on his pickup truck by a "star" at the Chaffee Landfill.

33.  On or about May 29 and 30, 2003, and June 2 and 9, 2003, Local 17 members ran New York State Department of Motor Vehicle checks on license plates of the vehicles at the Chaffee Landfill and operated by Marcy Excavation employees.

34.  In or about mid-2003, STS Construction signed a CBA with Local 17 at the initiation of a project the company obtained at the General Motors Plant in Tonawanda, New York.  Defendant **MARK N. KIRSCH** determined that only 2 of STS' employees would be admitted to Local 17.  Defendant **THOMAS FREEDENBERG** informed a representative of STS that Local 17 would only admit two of STS' employees to the union and the additional employees required by STS at the General Motors job would have to come from the existing Local 17 members.  The remaining STS employees were not allowed to operate equipment at this job site.

35.  On or about September 11, 2003, a Local 17 member, advised a representative of Amstar of Western New York, a union painting contractor, that Local 17 would require a Local 17 member to be hired by Amstar as a stand-by operator of a painting

compressor being used at the Michigan Street bridge reconstruction job site.  The representative of Amstar refused.  Over the night of on or about September 11, 2003, a fuel line was cut on the compressor causing diesel fuel to spill onto the asphalt, thus requiring the asphalt to be removed and replaced.  The removed asphalt also had to be disposed of as hazardous waste due to the contamination by the diesel fuel and the resultant damage at the site was over $14,000.

36.  On or about April 9, 2004, a bus load of Local 17 members were present at the Western New York Golf and Recreation Center project in Orchard Park, New York, where Wadsworth Golf Construction was building a new golf course.  Upon arriving at the project, the Local 17 members, including defendant **CARL A. LARSON**, broke off into two groups and surrounded two Wadsworth employees who were present at the site.  The Local 17 members made threatening statements at the employees, including "fuck you, you mother fucker, you're taking our work from us".

37.  On or about May 25, 2004, a representative of Zoladz Construction, upon unlocking a gate at the Dunkirk landfill on Van Buren Road in Pomfret, New York, was surrounded by Local 17 picketers and told by defendant **GEORGE DEWALD**, "You're not working here today." and, "You're gonna get hurt."  Also on that date, a

Local 17 picketer stated to an employee of Zoladz, "Laugh, you fucker, you're gonna be sorry," and, "You're gonna wish you signed." Later, defendant **DEWALD** advised an employee of Zoladz that to stop the picketing, Zoladz needed to sign an agreement with Local 17. Defendant **JEFFREY A. PETERSON** was the picket leader at the site.

38. On or about April 26, 2005, a representative of Wadsworth Golf Construction signed a Memorandum of Agreement with defendant **MARK N. KIRSCH,** forcing Wadsworth to replace all but one of their operators on each of their Buffalo area golf course projects with existing Local 17 operators. The representative of Wadsworth signed this agreement after members of Local 17 threatened unfair labor practice charges against Wadsworth.

39. On or about May 9, 2005, a representative of Ontario Speciality Contracting (OSC), had a meeting at Chef's Restaurant in Buffalo, New York, with defendant **MARK N. KIRSCH** and Gerald H. Franz, Jr. to discuss an upcoming project at the former National Fuel Gas site in Buffalo, New York. At the meeting, defendant **KIRSCH** advised the OSC representative that if OSC did not sign a Project Labor Agreement, defendant **KIRSCH** would shut the job down.

40.  On or about June 28, 2005, a Local 17 member spoke with a representative of Earth Tech regarding an upcoming project on Fourth Street in Buffalo, New York.  The Local 17 member told the Earth Tech representative to expect picketing by Local 17 at that work site and that the Local 17 member could not control the other Local 17 members' commission of unlawful activity.

41.  Beginning on or about July 18, 2005, and continuing for several months thereafter, Local 17 members picketed at the former National Fuel Gas site.  Among the picketers were defendants **CARL A. LARSON, JEFFREY A. PETERSON**, and **MICHAEL J. EDDY.**  While picketing at this location, defendants **LARSON, PETERSON** and **EDDY,** and other Local 17 members, told representatives of OSC that all of the problems would go away if OSC signed a CBA.

42.  At the former National Fuel Gas site, on or about July 18, 2005, a Local 17 member wrote down the license plates of vehicles parked at the work site, including a security guard's license plate number.  The Local 17 member also advised a security guard there to "go home and get your gun" and advised a security guard that that was a threat.

43.  On or about July 18, 2005, members of Local 17 ran six (6) license plates of vehicles that were located at the former

National Fuel Gas site including the plates of security guards and employees of OSC.

44. On or about July 19, 2005, Local 17 members began picketing at the Fourth Street Remediation site and delayed Earth Tech employees from entering. Also on that date, two (2) employees from Ecology & Environment that were working at the site had metal "stars" placed under their tires while parked on the road causing damage to one (1) tire. Also on that date, three (3) "stars" were placed on an access road and discovered.

45. On or about July 19, 2005, Local 17 members ran five (5) license plate checks on vehicles that included employees of Earth Tech and Ecology & Environment.

46. On or about July 19, 2005, in a meeting with the General Contractor of the former National Fuel Gas site, defendant **MARK N. KIRSCH** demanded that OSC be thrown off the project and replaced with a union contractor. When advised that a union contractor was already performing some of the work defendant **KIRSCH** stated that it was not enough.

47. On or about July 20, 2005, Local 17 picketers delayed five (5) Earth Tech employees access to the Fourth Street

Remediation site.  Also, the lock to the access gate had been glued shut and was required to be cut off.  After the Earth Tech employees gained access, two employees observed picketers placing their own lock back on the access gate.  Access by a number of vehicles continued to be denied by Local 17 members throughout this date.  Defendant **MARK N. KIRSCH**, with another Local 17 member present, advised Earth Tech representatives that Earth Tech would have to hire all union operators at that job site.

48.  On or about July 21, 2005, a truck driven by an Earth Tech employee was gouged with a sharp object as the truck passed through the Local 17 picket line.  Picketers surrounded the truck and driver after he passed through the line and defendant **MICHAEL J. EDDY**, a Local 17 member, was arrested for harassment.

49.  On or about July 22, 2005, a Local 17 member told an employee of Earth Tech, "Tell Tara you're going to be a little late tonight."  Tara was the Earth Tech employee's wife.  Also, on that date, an Earth Tech employee departing the job site was followed by defendant **CARL A. LARSON**, a Local 17 member, and the license plate number of an Earth Tech employee was run on the Local 17 New York State Department of Motor Vehicles account.

50.  On or about July 23, 2005, an Earth Tech employee and Ecology & Environment employee each received anonymous threatening letters at their homes referring to their work at the Fourth Street Remediation site.

51.  On or about July 25, 2005, the wife of an Earth Tech employee received an anonymous threatening letter at their home referring to the work at the Fourth Street Remediation site.

52.  On or about July 25, 2005, a line to the fuel tank of a John Deere loader was cut at the Fourth Street Remediation site.

53.  On or about July 26, 2005, a representative of Earth Tech and a Local 17 member discussed the picket and the illegal activities involved.  The Local 17 member told the Earth Tech representative, "What do we have to lose?"

54.  On or about July 26, 2005, defendant **JEFFREY A. PETERSON** informed a representative of Earth Tech that Local 17 would allow 50 percent of Earth Tech's operators at the site to continue working there, however, they would have to become members of Local 17.  The remaining 50 percent of the operators would come from the existing Local 17 membership.  Defendant **PETERSON** added that Local

17 has lawyers on retainer and Earth Tech could save a lot of lawyer fees by signing with Local 17.

55.  On or about July 29, 2005, a gas truck arrived at the Fourth Street Remediation project to repair an exposed gas line at the project site.  Local 17 members who were picketing there prevented the gas truck access to the Fourth Street Remediation site and the gas truck departed the Fourth Street Remediation site.

56.  On or about August 8, 2005, one of the locks at Gate 3 of the former National Fuel site clean-up project was glued shut. Also, on that date, Local 17 picketers told an OSC employee that they would follow him home.

57.  On or about August 9, 2005, a metal star was found outside one of the gates at the former National Fuel site clean-up project.

58.  On or about August 10, 2005, members of Local 17 ran the license plate of a private investigator parked at the National Fuel Gas site and a Local 17 member called out the investigator's home address to this individual.

59.  On or about August 10, 2005, metal "stars" were placed under the tires of two vehicles parked on the street near the National Fuel Gas site where Local 17 members were picketing.  One of the vehicles obtained a flat tire when it attempted to pull away.

60.  On or about August 10, 2005, a Local 17 picketer told an OSC representative, "We know where you live.  We'll get you at home."

61.  On or about August 11, 2005, defendant **GEORGE DEWALD**, a Local 17 member, put a gouge in a vehicle operated by a security guard at the former National Fuel site clean-up project.

62.  On or about August 25, 2005, a Local 17 member attempted to cause a truck departing the National Fuel Gas site and carrying contaminated soil to crash.

63.  On or about August 27, 2005, a padlock on a gate at the former National Fuel site clean-up project was glued shut.  As OSC employees attempted to cut the lock off of the gate, defendant **MICHAEL J. EDDY**, a Local 17 member, kicked a gate causing injury to the hand of an OSC employee.  Defendant **EDDY** and other Local 17

picketers then threw hot cups of coffee in the face of the OSC employee.

64.  On or about August 27, 2005, a truck loaded with contaminated soil leaving the former National Fuel site clean-up project sustained a flat tire caused by a metal star and Local 17 picketers cheered.  As workers from the job site responded to assist the truck, Local 17 picketers threw coffee on their vehicle.

65.  On or about August 27, 2005, defendants **CARL A. LARSON** and **JEFFREY A. PETERSON,** and other Local 17 picketers, pushed a gate over causing injury to a security guard at the National Fuel Gas site.  Also on that date, the door of a truck operated by Pariso Trucking was dented by a bottle thrown by a Local 17 picketer.

66.  On or about September 22, 2005, defendant **MARK N. KIRSCH,** Local 17 President, signed a Settlement Agreement with the National Labor Relations Board regarding Local 17's actions towards Earth Tech at the Fourth Street Remediation site.

67.  On or about September 22, 2005, defendant **MARK N. KIRSCH** signed a Settlement Agreement with the National Labor Relations

Board regarding Local 17's actions taken against OSC at the National Fuel Gas site.

68.  During the week of on or about April 2, 2006, a Local 17 Business Representative advised a Uniland Development Company representative to replace Ingalls Development and hire Anastasi Construction, a union contractor.

69.  On or about April 4, 2006, the Uniland Development Company job site on Delaware Avenue in Buffalo, New York was picketed by Local 17.  On that date, a lock was placed on one of the gates and had to be cut off.

70.  On or about April 10, 2006, while departing the Delaware Avenue job site, a dump truck operated by Pariso Trucking ran over a "star" which caused a flat tire.

71.  On or about April 10, 2006, Local 17 picketers took pictures of license plates of vehicles at the job site and followed workers and trucks from the job site.

72.  On or about May 2, 2006, defendant **JEFFREY C. LENNON**, a Local 17 member, attempted to place "stars" in the entrances to the Delaware Avenue work site.

73.  On or about May 2, 2006, defendant **JEFFREY C. LENNON**, a Local 17 member, handed out "stars" to a picketer to throw at the Uniland job site.

74.  During the Uniland picket, defendant **MARK N. KIRSCH** gave Gerald H. Franz, Jr. "stars" to throw at the picket site.  Also during this picket, defendant **JEFFREY A. PETERSON** gave a Local 17 member "stars" to throw at the picket site.

75.  In or about late May 2006, a Local 17 member told a representative of Wadsworth Golf Construction that the Local 17 member learned to weld during their Local 17 apprenticeship by welding metal "stars" to be thrown at picket sites.

76.  In or about early June, 2006, one of the Local 17 picketers advised a representative of Uniland Development Company, "I'm going to Anderson to fuck your wife."

77.  During the week of on or about June 6, 2006, defendant **THOMAS FREEDENBERG** had a telephone conversation with a representative of Wadsworth Golf Construction in which defendant **FREEDENBERG** told Wadsworth that their agreement "doesn't mean shit" when Wadsworth advised defendant **FREEDENBERG** that Wadsworth wanted

to utilize one of their own employees on a piece of construction equipment, within the terms of their agreement.

78.  On or about June 28, 2006, defendant **KENNETH EDBAUER**, a Local 17 member, threw coffee at a truck driver at the Uniland Development Company site and was arrested.

79.  During a discussion with another Local 17 member at the Uniland job site, defendant **KENNETH EDBAUER** stated that Local 17 has a new type of grinding compound that they can use to vandalize construction equipment and that this compound cannot be detected.

**All in violation of Title 18, United States Code, Section 1951(a).**

## COUNT 3

**(Attempted Hobbs Act Extortion of
STS Construction of Western New York and its Employees)**

**The Grand Jury Further Charges that:**

Commencing in or about January 1997 through and including in or about May 2003, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON**, **MARK N. KIRSCH**, and **MICHAEL J. CAGGIANO**, together and with others, known and unknown, did unlawfully obstruct, delay

and affect interstate commerce and the movement of articles and commodities in interstate commerce, by extortion, and attempted to do so; that is, did attempt to obtain property of STS Construction of Western New York (hereinafter, "STS"), and its employees, such property consisting of (i) STS' right to make business decisions free from outside pressure,(ii) wages and benefits to be paid by STS for unwanted, unnecessary, and superfluous labor, and (iii) STS's employees jobs and associated wages and benefits, at several construction project locations, to include, among others:  the Roswell Park Cancer Institute site, in Buffalo, New York; the Rath Building site, in Buffalo, New York; the Buffalo Psychiatric Center site, in Buffalo, New York; the Army Corps of Engineers site in Tonawanda, New York; and the General Motors Plant in Tonawanda, New York, with the consent of STS and its owner Timothy P. Such, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to STS, its owner Timothy P. Such, and employees and their property.

**All in violation of Title 18, United States Code, Sections 1951(a) and 2.**

## COUNT 4

**(Attempted Hobbs Act Extortion of
Zoladz Construction Company, Inc. and its Employees)**

**The Grand Jury Further Charges that:**

Commencing in or about May 2002 through and including on or about May 25, 2004, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **JEFFREY A. PETERSON**, **CARL A. LARSON**, and **GEORGE DEWALD**, together and with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce in the movement of articles and commodities in interstate commerce by extortion, and attempted to do so, that is, did attempt to obtain property of Zoladz Construction Company, Inc. (hereinafter, "Zoladz") and its employees, such property consisting of (i) Zoladz's right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by Zoladz for unwanted, unnecessary, and superfluous labor, and (iii) Zoldaz's employees jobs and associated wages and benefits, at several construction project locations, to include, among others:  73 Tyler Street, Buffalo, New York; 216 Strauss Street, Buffalo, New York; 32 Wilson Street, Buffalo, New York; 841 Clinton Street, Buffalo, New York; and the Dunkirk landfill, Pomfret, New York, with the consent of Zoladz, its owners, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of

economic harm resulting from actual and threatened physical violence to Zoladz, its owners, and employees and their property.

**All in violation of Title 18, United States Code, Sections 1951(a) and 2.**

<br>

## COUNT 5

**(Attempted Hobbs Act Extortion of Waste Management and Marcy Excavation Company and its Employees)**

**The Grand Jury Further Charges that:**

<br>

Commencing in or about January 2003 through and including in or about September 2003, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **GERALD E. BOVE, MICHAEL J. EDDY, GEORGE DEWALD**, and **JEFFREY A. PETERSON**, with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce, by extortion, and attempted to do so, that is, did attempt to obtain property of Waste Management (hereinafter referred to as "WM"), Marcy Excavation Company (hereinafter, "Marcy") and its employees, such property consisting of (i) WM's and Marcy's right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by Marcy for unwanted, unnecessary, and superfluous labor, and (iii) Marcy's employees jobs and associated wages and benefits, at

a landfill construction project in Chaffee, New York with the consent of WM, Marcy, their owners, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to WM, Marcy, its owners, and employees and their property.

**All in violation of Title 18, United States Code, Sections 1951(a) and 2.**

<u>**COUNT 6**</u>

**(Attempted Hobbs Act Extortion of Environmental Strategies and Ontario Speciality Contracting and its Employees)**

**The Grand Jury Further Charges that:**

Commencing in or about April 2005 through and including in or about November 2005, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON, MARK N. KIRSCH, JEFFERY A. PETERSON, GEORGE DEWALD,** and **MICHAEL J. EDDY,** together and with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, and attempted to do so, that is, did attempt to obtain property of Environmental Strategies (hereinafter referred to as "ES"), Ontario Speciality Contracting (hereinafter,

"OSC") and their employees, such property consisting of (i) ES's and OSC's right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by OSC for unwanted, unnecessary, and superfluous labor, and (iii) OSC's employees' jobs and associated wages and benefits, at a construction clean-up project at the former National Fuel site in Buffalo, New York, with the consent of ES, OSC, their owners, agents, and employees, induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to ES, OSC, their owners, and employees and their property.

**All in violation of Title 18, United States Code, Sections 1951(a) and 2.**

## COUNT 7

**(Attempted Hobbs Act Extortion of Ecology & Environment and Earth Tech and its Employees)**

**The Grand Jury Further Charges that:**

Commencing in or about April 2005 through and including in or about September 2005, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **MARK N. KIRSCH** and **MICHAEL J. EDDY**, together and with others, known and unknown, did unlawfully obstruct, delay and

affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, and attempted to do so, that is, did attempt to obtain property of Ecology & Environment (hereinafter referred to as "EE"), Earth Tech and their employees, such property consisting of (i) EE's and Earth Tech's right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by Earth Tech for unwanted, unnecessary, and superfluous labor, and (iii) Earth Tech's employees jobs and associated wages and benefits, at a construction project at a construction project at the Fourth Street Remediation site in Buffalo, New York, with the consent of EE, Earth Tech, its owners, agents, and employees induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to EE, Earth Tech, its owners, and employees and their property.

**All in violation of Title 18, United States Code, Sections 1951(a) and 2.**

## COUNT 8

**(Attempted Hobbs Act Extortion of Wadsworth
Golf Construction Company and its Employees)**

**The Grand Jury Further Charges that:**

Commencing in or about October 2003 through and including in or about Summer 2007, the exact dates being to the grand jury unknown, in the Western District of New York, and elsewhere, the defendants, **CARL A. LARSON, MARK N. KIRSCH,** and **THOMAS FREEDENBERG,** together and with others, known and unknown, did unlawfully obstruct, delay and affect interstate commerce and the movement of articles and commodities in interstate commerce by extortion, and attempted to do so, that is, did attempt to obtain property of Wadsworth Golf Construction Company (hereinafter, "WGC") and their employees, such property consisting of (i) WGC's right to make business decisions free from outside pressure, (ii) wages and benefits to be paid by WGC for unwanted, unnecessary, and superfluous labor, and (iii) WGC's employees jobs and associated wages and benefits, at construction projects at the First Tee job site in Orchard Park, New York and at a job site in Cheektowaga, New York, with the consent of WGC, its owners, agents, and employees induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm resulting from actual and threatened physical violence to WGC, its owners, and employees and their property.

All in violation of Title 18, United States Code, Sections 1951(a) and 2.

## FORFEITURE ALLEGATION

**The Grand Jury Alleges that:**

1.    The allegations contained in Count 1 of this Second Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 1963.

2.    From their convictions on Count 1 of this Second Superseding Indictment, the defendants, **CARL A. LARSON, MARK N. KIRSCH, JEFFREY A. PETERSON, GERALD E. BOVE, JEFFREY C. LENNON, KENNETH EDBAUER, GEORGE DEWALD,** and **MICHAEL J. EDDY,** shall forfeit to the United States the following:

a.    any interests the person has acquired or maintained in violation of Title 18, United States Code, Section 1962;

b.    any interests in, security of, claims against, or property or contractual rights of any kind affording a source of influence over, any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

c. any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962.

3. The property rights and interests sought to be forfeited to the United States, includes, but is not limited to the following, any and all job related benefits, specifically including the following property: respective rights, titles, interest, memberships, and/or union offices or positions in International Union of Operating Engineers, Local 17, AFL-CIO.

**All pursuant to Title 18, United States Code, Sections 1963(a)(1), 1963(a)(2) and 1963(a)(3).**

DATED: Buffalo, New York, January <u>10th</u>, 2012.

                              JAMES P. KENNEDY, JR.
                              Attorney for the United States
                              Acting Under Authority Conferred by
                              28 U.S.C. § 515

                    BY:  S/CHARLES B. WYDYSH
                              CHARLES B. WYDYSH
                              Assistant United States Attorney
                              United States Attorney's Office
                              Western District of New York
                              138 Delaware Avenue
                              Buffalo, New York  14202
                              716/843-5870
                              Charles.Wydysh2@usdoj.gov

A TRUE BILL:


S/FOREPERSON
FOREPERSON