UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   v.                                    **DECISION AND ORDER**
                                          07-CR-304S
CARL A. LARSON, et al.,              1, 2, 4, 6, 7, 8, 9, 10, 11, 12

                            Defendants.

## I. INTRODUCTION

This is a criminal action brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.*, and the Hobbs Act, 18 U.S.C. § 1951. Briefly, over the course of about eleven years, Defendants, members of a labor union known as "Local 17," are alleged to have engaged in threats, physical violence, and property damage in an attempt to force construction employers in Western New York to hire Local 17 members for their projects. Pending before this Court is Defendants' joint motion to dismiss the Second Superseding Indictment pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure for failure to state an offense. This Court finds the matter fully briefed and oral argument unnecessary.

This is Defendants' third attempt to dismiss the pending indictment, and familiarity with the facts is assumed. In the present motion, Defendants argue that the Second Superseding Indictment does not state sufficient allegations of extortable property as defined by the Supreme Court's recent ruling in Sekhar v. United States, 133. S. Ct. 2720, 186 L. Ed. 2d 794 (June 26, 2013).

1

## II. DISCUSSION

**A.     Motion to Dismiss the Indictment**

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged." An indictment must also "provide enough detail so that [a defendant] may plead double jeopardy in a future prosecution based on the same set of events." United States v. De La Pava, 268 F.3d 157, 162 (2d Cir. 2001); United States v. Goodwin, 141 F.3d 394, 401 (2d Cir. 1997), *cert denied*, 525 U.S. 881 (1998). It need not be perfect, however, and "common sense and reason are more important than technicalities." De La Pava 268 F.3d at 162. Accordingly, a pre-trial motion to dismiss an indictment under Rule 12 must satisfy a "high standard." United States v. Larson, 807 F. Supp. 2d 142, 151 (W.D.N.Y. 2011); United States v. Lazore, 90 F.Supp.2d 202, 203 (N.D.N.Y. 2000). In considering whether to dismiss an indictment for failure to state a criminal offense, a court must assume the truth of the allegations in the indictment and determine whether the indictment is valid on its face. United States v. Bicoastal Corp., 819 F. Supp. 156, 158 (N.D.N.Y. 1993).

The Second Superseding Indictment charges Defendants with one count of racketeering conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), and alleges that the object of the conspiracy was the extortion of property from various construction firms throughout Western New York. The Indictment further charges one count of Hobbs Act extortion conspiracy, 18 U.S.C. § 1951(a), and six counts of attempted Hobbs Act extortion. (Docket No. 280.)

1.  Hobbs Act Extortion

The Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). As has been explained by the Supreme Court, "Congress used two sources of law as models in formulating the Hobbs Act: the Penal Code of New York and the Field Code, a 19th-century model penal code." Scheidler v. Nat'l Org. for Women ("Scheidler II"),[1] 537 U.S. 393, 403, 123 S. Ct. 1057, 154 L. Ed. 2d 991 (2003); see Sekhar, 133 S. Ct. at 2725. "The New York statute contained, in addition to the felony crime of extortion, a new (that is to say, nonexistent at common law) misdemeanor crime of coercion." Sekhar, 133 S. Ct. at 2725. Where extortion required the acquisition of property, the crime of coercion "required merely the use of threats 'to compel another person to do or to abstain from doing an act which such other such person has a legal right to do or to abstain from doing.'" Id. (quoting N.Y. Penal Law § 530 (1909), *earlier codified in* N.Y. Penal Code § 653 (1881)). In enacting the Hobbs Act, "Congress did not copy the coercion provision. The omission must have been deliberate, since it was perfectly clear that extortion did not include coercion." Sekhar, 133 S. Ct. at 2725. In light of this deliberate distinction, the 'obtaining' element of extortion requires both the deprivation and acquisition of property. Sekhar, 133 S. Ct. at 2725; Scheidler II, 537 U.S. at 404.

The Supreme Court's holding in Sekhar is not new. The distinction between

---

[1] As noted by the Second Circuit in United States v. Gotti, 459 F.3d 296, 301 n. 1 (2d Cir. 2006), *cert denied*, 551 U.S. 1144 (2007), Scheidler was before the Supreme Court on three separate occasions: in 1994, 2003, and again in 2006.

extortion and coercion was initially examined at length by the Court in Scheidler II. There, the Court considered whether protesters at abortion clinics committed extortion under the Hobbs Act by using or threatening to use force, violence, or fear to obtain certain property rights, specifically "a woman's right to seek medical services from a clinic, the right of the doctors, nurses or other clinic staff to perform their jobs, and the right of the clinics to provide medical services free from wrongful threats, violence, coercion and fear." 537 U.S. at 400-1. The Court stated:

> There is no dispute in these cases that petitioners interfered with, disrupted, and in some instances completely deprived respondents of their ability to exercise their property rights. . . . But even when their acts of interference and disruption achieved their ultimate goal of 'shutting down' a clinic that performed abortions, such acts did not constitute extortion because petitioners did not 'obtain' respondents' property. Petitioners may have deprived or sought to deprive respondents of their alleged property right of exclusive control of their business assets, but they did not acquire any such property. *Petitioners neither pursued nor received something of value from respondents that they could exercise, transfer, or sell*.

Scheidler II, 537 U.S. at 404-5 (internal quotation marks omitted, emphasis added).

In considering the effect of Scheidler II, the Second Circuit relied on the Supreme Court's statement that it was not reaching, much less rejecting, this Circuit's decision in United States v. Tropiano. See United States v. Gotti, 459 F.3d 296, 323 (2d Cir. 2006), *cert denied*, 551 U.S. 1144 (2007) (citing Tropiano, 418 F.2d 1069, 1075 (2d Cir. 1969), *cert denied*, 397 U.S. 1021 (1970)); see also Scheidler II, 537 U.S. at 402 n. 6 (characterizing the right at issue in Tropiano as "the intangible right to solicit refuse collection accounts"). In Tropiano, the Circuit court recognized that "[t]he concept of property under the Hobbs Act, as devolved from its legislative history and numerous decisions, is not limited to physical or tangible property or things." 418 F.2d at 1075.

4

Scheidler II was therefore interpreted as "only tightening the 'obtaining' requirement," thereby "leaving intact this Circuit's precedent that intangible property rights can qualify as extortable property under the Hobbs Act and as simply clarifying that before liability can attach, the defendant must truly have obtained (or, in the case of attempted extortion, sought to obtain) the property right in question." Gotti, 459 F.3d at 323.  Further, the Second Circuit "read the Court's emphasis [in Scheidler II] on the possibility of exercising, transferring, or selling the property as a concern with the extortionist's *intent* with respect to the property at issue." Gotti, 459 F.3d at 323 (emphasis in original).

Following Scheidler II and Gotti, the key inquiry in this Circuit for the purposes of Hobbs Act extortion has been "whether the defendant is (1) alleged to have carried out (or in the case of attempted extortion, attempted to carry out) the deprivation of a property right from another, with (2) the intent to exercise, sell, transfer, or take some other analogous action with respect to that right." Gotti, 459 F.3d at 324; United States v. Cain, 671 F.3d 271, 282-83 (2d Cir. 2012), *cert denied*, 132 S. Ct. 1872 (2012); see also United States v. Shi Xing Dong, 513 Fed. App'x 70, 72 (2d Cir. 2013); United States v. Hui Chen, 350 Fed. App'x 520, 522-23 (2d Cir. 2009), *cert denied*, 559 U.S. 961 (2010). Transferable property has been found to include union members' rights to free speech and democratic participation in union affairs where defendants intended to exercise those rights for themselves, Gotti, 459 F.3d at 325; an employee's salary and right to be employed where defendants sought to replace that employee with their own preferred candidate, id. at 326; and "intangible property rights to make business decisions . . . free from outside pressure" where defendants sought not to shut down the business, but to make themselves silent partners, id. at 327.  Similarly, the use of threats and force to induce competitors to

5

abandon work for the purpose of enlarging the defendant's market share was a permissible theory of extortion consistent with Schedler II and Tropiano. Cain, 671 F.3d at 282. Such a theory has been compared to an attempt to force entry into a non-competition agreement for the benefit of defendants. Gotti, 459 F.3d at 323-4; Hui Chen, 350 Fed. App'x at 522.

This was the state of the relevant law when the Second Circuit heard United States v. Sekhar in 2012. See 683 F.3d 436 (2d Cir. June 26, 2012), *rev'd*, 133 S.Ct. 2720 (June 26, 2013). At issue was whether the defendant was guilty of attempted extortion for threatening to disclose that the general counsel for the New York State Comptroller's Office was having an affair unless the counsel recanted a recommendation to the Comptroller. Id. at 437. The general counsel had recommended that the Comptroller not issue a non-binding "Commitment" approving an investment by the state employee pension fund with a fund managed by defendant's company. Id. at 438. The Second Circuit rejected the defendant's argument that there was no attempt to obtain property within the meaning of Hobbs Act extortion. Citing Tropiano and Gotti, the Circuit court reiterated that the right to pursue a lawful business free from threats and the ability to make business decisions free from outside pressure have long been recognized as a property rights. Sekhar, 683 F.3d at 440-41. The Circuit court then affirmed the conviction, stating that the defendant "Sekhar attempted to deprive the [g]eneral [c]ounsel of his right to make a recommendation consistent with his legal judgment and attempted to exercise that right by forcing the [g]eneral [c]ounsel to make a recommendation determined by *Sekhar*." Id. at 442 (emphasis in original).

The Supreme Court reversed. The Court found that, even assuming the personal right at issue was property, "it certainly was not *obtainable property* under the Hobbs Act."

6

133 S. Ct. at 2726 (emphasis in original).  Considering the government's description of the general counsel's "intangible property right to give his disinterested legal opinion to his client free of improper outside interference," the Court asked, "But what, exactly, would the [defendant] have obtained for himself?  A right to give his own disinterested legal opinion to his own client free of improper interference?  Or perhaps, a right to give the general counsel's disinterested legal opinion to the general counsel's client?" Id. at 2727 (emphasis removed).  Either formulation was "absurd" because the defendant's goal was not to acquire the general counsel's right to make a recommendation, but instead "to force the general counsel to offer advice that accorded with [the defendant's] wishes." Id.  This, the Court concluded, "is coercion, not extortion." Id.

    2.    <u>Property Allegations in the Second Superseding Indictment</u>

Defendants contend that, following the Supreme Court's decision in Sekhar, the Second Superseding Indictment fails to sufficiently charge extortion in connection with any of the charges, and therefore it must be dismissed. They argue that all four property allegations underlying the charges in the indictment fail to satisfy Sekhar's requirement of transferability.  Those allegations are that Defendants attempted to gain by extortion:

    a.    Property of construction contractors consisting of wages and benefits to be paid pursuant to labor contracts with Local 17 at construction projects in Western New York.

    b.    Property of non-union construction laborers consisting of the jobs being performed by those non-union laborers and the wages and benefits associated with those jobs at construction projects in Western New York.

    c.    Property of construction contractors and businesses consisting of the right to make business decisions free from outside pressure at construction projects in Western New York.

> d. Property of construction contractors consisting of wages and employee benefit contributions paid or to be paid by said contractors for unwanted, unnecessary, and superfluous labor.

(Sec. Sup. Indict. ¶ 8, Docket No. 280.) Defendants assert that each of these categories of property "are all derivations of [a] core accusation – that the defendants sought to deprive contractors of the right to make business decisions free from outside pressure, in particular by forcing them to enter into union contracts." (Defs' Mem of Law at 7, Docket No. 367.) They therefore argue that, post-Sekhar, this type of claim "equates to an accusation of coercion, not extortion." (Id. at 5.)

The Government responds that Sekhar is distinguishable in light of the particular property at issue in this case, a labor contract and its accompanying wages and benefits.

### i. Wages and Benefits Pursuant to a Labor Contract

The first property allegation asserts that Defendants sought wages and benefits to be paid by construction contractors "pursuant to labor contract with Local 17." Defendants argue that "this so-called extortion objective constitutes nothing more than the decision of who to hire," and therefore amounts merely to coercion. (Defs' Mem of Law at 8.) This Court disagrees. First, the fact that a contractor could choose to hire union workers is not dispositive. "The Hobbs Act speaks of extortion as 'the obtaining of property from another, *with his consent*, induced by wrongful use of actual or threatened force." Cain, 671 F.3d at 283 (emphasis in original) (citing 18 U.S.C. § 1951(b)(2)). "The essential requirement to establish extortion is thus that the victim retain 'some degree of choice in whether to comply with the extortionate threat, however much of a Hobson's choice that may be.'" Cain, 671 F.3d at 283 (quoting United States v. Zhou, 428 F.3d 361, 371 (2d Cir. 2005)). "Indeed, this element of consent is the razor's edge that distinguishes extortion from

robbery." Zhou, 428 F.3d at 371.

Second, this argument ignores the fact that a contract and contractual rights can be assigned, and therefore constitute something of value that can be exercised, transferred, or sold. Cf. Scheidler II, 537 U.S. at 405 (no extortion liability where the defendants neither pursued nor received something of value from respondents that they could exercise, transfer, or sell); see Gotti, 459 F.3d at 323 (intangible property rights such as "noncompetition or exclusivity agreements [] are certainly things of value that are capable of being exercised, transferred, or sold"); see generally Globecon Group, LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 172 (2d Cir. 2006) (noting that assignment of contractual rights is generally permitted); Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 313-14, 926 N.E.2d 1202, 1209 (2010) (intangible contract right could be assigned, and therefore constituted property subject to attachment); ABKCO Indus. v. Apple Films, 39 N.Y.2d 670, 674, 350 N.E.2d 899, 901 (1976) (same). Further, this Court has already rejected Defendants' contention that a labor contract was a legitimate union objective and therefore their alleged actions were not wrongful under United States v. Enmons, 410 U.S. 396, 93 S. Ct. 1007, 35 L. Ed. 2d 379 (1973). See United States v. Larson, 807 F. Supp. 2d 142, 156-58 (W.D.N.Y. 2011). This allegation therefore sufficiently states "obtainable property" in support of a charge of extortion.

      ii. *Wages and Benefits for Unwanted, Unnecessary, and Superfluous Labor*

Defendants' contention that this allegation is "vague" and just another "version of the Government's claim that the [D]efendants were seeking labor union contracts"(Defs' Mem of Law at 9) ignores the history of the enactment of the Hobbs Act.

> The Hobbs Act was passed after this Court had construed s 2 of the Federal Anti-Racketeering Act of 1934, 48 Stat. 979, in United States v. Local 807, 315 U.S. 521, 62 S.Ct. 642, 86 L.Ed. 1004. Subsection (a) of s 2 barred, with respect to interstate commerce, exaction of valuable considerations by force, violence or coercion, 'not including, however, the payment of wages by a bona-fide employer to a bona-fide employee'. We held in Local 807 that this exception covered members of a city truck drivers' union offering superfluous services to drive arriving trucks to their city destination with intent, if the truck owners refused offer, to exact the wages by violence. In the Hobbs Act, 60 Stat. 420, carried forward as 18 U.S.C. s 1951, 18 U.S.C.A. s 1951, which amended the Anti-Racketeering Act, the exclusion clause involved in the Local 807 decision was dropped. The legislative history makes clear that the new Act was meant to eliminate any grounds for future judicial conclusions that Congress did not intend to cover the employer-employee relationship.

United States v. Green, 350 U.S. 415, 418-19, 76 S. Ct. 522, 100 L. Ed. 494 (1956).

Further, the Supreme Court specified in Green that criminal behavior was not limited to situations where unions or union officials used threats of force or violence "to obtain property for the personal benefit of the union or its agent." Id. at 420.

> The city truckers in the Local 807 case similarly were trying by force to get jobs and pay from the out-of-state truckers by threats and violence. The Hobbs Act was meant to stop just such conduct. And extortion as defined in the statute in no way depends upon having a direct benefit conferred on the person who obtains the property.

Id.; see Enmons, 410 U.S. at 403 (the Act was designed to "prevent both union members and non union people from making use of robbery and extortion under the guise of obtaining wages in the obstruction of interstate commerce" (citation omitted)). Nothing in the Court's decision in Sekhar limits this original intent. The conclusion that "jobs and pay" – in other words, "wages and benefits" – constitute obtainable property under the Hobbs Act is therefore inescapable. Green, 350 U.S. at 420.

   *iii. Right to Make Business Decisions Free from Outside Pressure*

As noted above, the Second Circuit continued to recognize "intangible property

10

rights to make business decisions . . . free from outside pressure" following the Supreme Court's decision in Scheidler II. See Gotti, 459 F.3d at 327.  In Gotti, the Second Circuit reasoned that the element of obtainable property was met where the defendants sought to exercise the extortion victim's right to make business decisions for their own benefit. Id. In so concluding, the Circuit court distinguished Scheidler II on the ground that, there, the ultimate goal of the protesters was only to shut down clinics that performed abortions. Id. at 323 (citing Scheidler II, 537 U.S. at 405).

> This did not constitute acquisition in the eyes of the Scheidler II Court, we believe, because there was no further intended activity on the part of the protestors, and mere interference with the clinics' right to conduct their business, even to the point of getting them to cease conducting their business altogether, was closer to coercion than extortion.  But had the protestors sought to take further action after having deprived the clinics of their right to conduct their business as they wished – by, for example, *forcing the clinic staff to provide different types of services*, forcing the clinic to turn its operations over to the protestors, or selling the clinic or its property to a third party – we believe they would have satisfied the Scheidler II Court's definition of "obtaining."

Gotti, 459 F.3d at 323-24 (emphasis added).

This analysis does not survive the Supreme Court's decision in Sekhar.  There, the Supreme Court found the government's argument "unconvincing" when it attempted to distinguish Scheidler II on the same basis:

> In [the government's] view, had the protesters sought to force the clinics to provide services other than abortion, extortion would have been a proper charge. [The defendant] committed extortion here, the [g]overnment says, because he did not merely attempt to prevent the general counsel from giving a recommendation but tried instead to force him to issue one.  That distinction is, not to put too fine a point on it, nonsensical.  It is coercion, not extortion, when a person is forced to do something and when he is forced to do nothing.

Sekhar, 133 S.Ct. at 2726 n. 4.

11

This conclusion does not, however, form a basis for dismissing all or part of the Second Superseding Indictment in the instant case. No predicate racketeering act or Hobbs Act charge relies on the contractors' right to make business decisions free from interference as the *sole* supporting property allegation. Instead, every charge alleges that the property sought to be obtained by Defendants included either wages and benefits to paid pursuant to labor contracts with Local 17 or wages and benefits to be paid for unwanted, unnecessary, and superfluous labor. As concluded above, these allegations sufficiently state "obtainable property" for the purpose of the Hobbs Act, and therefore no charge fails to state an offense. Thus, this issue is one better discussed in connection with the jury instructions.

*iv. Wages and Benefits belonging to Non-Union workers*

The Second Superseding Indictment also charges that Defendants attempted to obtain the "[p]roperty of non-union construction laborers consisting of the jobs being performed by those non-union laborers and the wages and benefits associated with those jobs." (Sec. Sup. Ind. ¶ 8(b).) This Court has already concluded that wages and benefits associated with construction jobs constitute property obtainable from construction contractors. The issue therefore is whether these wages and benefits are also obtainable *from the non-union laborers*, as opposed to their contractor-employers. However, the parties have not addressed this issue as currently framed. Further, because every predicate racketeering act and Hobbs Act charge is supported by at least one allegation sufficiently stating extortable property, as noted above, resolution of this issue does not affect the disposition of the current motion to dismiss.

**B.     Disclosure of Grand Jury Minutes**

Defendants request that, in the event the motion to dismiss is denied, this Court direct the disclosure of the grand jury transcripts to the defense. Rule 6 of the Federal Rules of Criminal Procedure permits a court to order such disclosure where, among other things, a defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Cr. P. 6(e)(3)(E)(ii).

This Court rejects Defendants' argument that there are grounds to believe "that the grand jury was not instructed about the critical distinction between extortion and coercion as delineated by the Sekhar Court and as set forth in the applicable New York State [extortion and coercion] statutes." (Defs' Mem of Law at 16.) As noted above, this delineation is not new, but was discussed at length in the Supreme Court's 2003 Scheidler II case and has been applied in this Circuit since that decision. Scheidler II, 537 U.S. at 402-406; Gotti, 459 F.3d at 319-325. Further, although Sekhar does preclude the Second Circuit's prior interpretation of 'the right to make business decisions free from outside pressure' as obtainable property for the purpose of extortion, "narrowing the scope of an indictment, whether through proof of a lesser offense offered at trial, or by redaction, does not offend the notice and review functions served by a grand jury's issuance of an indictment." United States v. Smith, 918 F.2d 1032, 1036 (2d Cir. 1990), *cert denied*, 498 U.S. 1125 (1991) (district court did not err in failing to order the government to re-present an indictment properly purged of intangible non-property right fraud charges after narrowing of the law). "As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of

13

committing the same crime." United States v. Miller, 471 U.S. 130, 136, 105 S.Ct. 1811, 85 L. Ed. 2d 99 (1985); Smith, 918 F.2d at 1036.  Defendants have failed to meet their burden of establishing a particularized need for disclosure of the proceedings before the grand jury. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S. Ct. 1237, 3 L. Ed. 2d 1323 (1959). The request is therefore denied.

### III. CONCLUSION

This Court finds that the Second Superseding Indictment sufficiently states the offenses charged, including the attempted extortion of obtainable property by Defendants. The joint motion to dismiss the Second Superseding Indictment or, alternatively, for disclosure of the grand jury proceedings, is denied.

### IV. ORDERS

IT HEREBY IS ORDERED, that Defendants' Joint Motion to Dismiss the Second Superseding Indictment or, alternatively, for Grand Jury Disclosure (Docket No. 367) is DENIED in its entirety; and

FURTHER, that Defendants' Motion for Oral Argument on the same (Docket No. 373) is DENIED.

SO ORDERED.


Dated: October 9, 2013
       Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                Chief Judge
                                                United States District Court